UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHESEBROUGH-POND'S, INC., et al., :
:
                              Plaintiffs, :    REPORT AND
                                       :    RECOMMENDATION
                 - against -                :
:    03 Civ. 1899 (JSR) (RLE)
HUDSON BARTER CO., INC., et al., :
:
                              Defendants. :

**To the HONORABLE JED S. RAKOFF, U.S.D.J.:**

## I. INTRODUCTION

This matter was referred for an inquest on damages following an entry of default judgment by The Honorable Jed S. Rakoff on June 18, 2003, against defendant Classis Distributors ("Classis"). Plaintiffs, Chesebrough-Pond's, Inc., and CONOPCO, Inc., doing business as Chesebrough-Pond's USA Co. ("Chesebrough"), seek a total of $541,588.37 in this trademark infringement case. This includes $162,000 in damages, an estimate of the profits Classis made from selling an infringing product, and $379,588.37 in attorney's fees and costs. For the reasons which follow, I recommend that Chesebrough be awarded $162,000 in damages, and $49,634.03 in attorney's fees and costs, for a total of $211,634.03.

## II. BACKGROUND

Chesebrough is the owner of several trademark registrations for VASELINE®, and the company manufactures and produces the well-known petroleum jelly by that name, which sports a distinctive trade dress: a rectangular-shaped jar with a blue cap and blue label. Declaration of Gregory P. Gulia in Support of Plaintiffs' Application for Damages and Attorneys' Fees ("First Gulia Decl.") ¶ 2-3. On May 21, 2003, Chesebrough filed suit against the defendants for using a

trademark and trade dress similar to the VASELINE mark on a similar product: "VYSLEEN." **Id**. ¶ 4-6. Two of the defendants, Hudson Barter Company and Anwer Qureishi, answered the complaint and Chesebrough eventually settled its claims against them. **Id**. ¶ 7-9. Defendant Classis, however, did not answer the complaint or appear, and default judgment was granted against it on June 18, 2003, and entered on June 23, 2003. **Id**. ¶ 10.

Unable to obtain discovery from Classis, Chesebrough conducted investigations into sales of VYSLEEN and located stores around the country which had purchased the infringing merchandise from Classis. **Id**. ¶ 11-12. Chesebrough then brought another suit in this district against those entities distributing the product in larger quantities, and obtained a temporary restraining order and seizure order. **Id**. ¶ 12; **Chesebrough-Pond's Inc., et al. v. Tropical Int'l Cosmetics, Inc., et al.**, 03 Civ. 5699. Having recently obtained information indicating that Classis continues to operate a business, **id**. ¶ 13, Chesebrough now seeks to recover damages from Classis as well as an award of the attorney's fees and costs incurred in enforcing its trademark rights, including those incurred in the second, related action against separate defendants.

## III. DISCUSSION

**A.     Profits as an Element of Damages**

Section 36(a) of the Lanham Act, 15 U.S.C. § 1117(a), provides, in relevant part, that when there has been a violation of the rights of a registrant of a registered mark, or a violation of 15 U.S.C. §§ 1125(a) and (c), "the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C.

§ 1117(a). Section 1117(a) also provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." **Id**.

In the absence of discovery from Classis, Chesebrough has limited its request for damages to the profits obtained by Classis. Chesebrough estimates, based on limited discovery, that the defendants in this case sold at least 900,000 units of the infringing product at a profit of fifty-four cents per unit. First Gulia Decl. ¶ 7-8, Exhs. 5 and 6. This information was obtained from the other defendants and their counsel. Classis is jointly and severally liable for the entire sum of all defendants' profits ($486,000), but Chesebrough limited its request to Classis's third ($162,000), as is appropriate since Chesebrough settled its claims with the remaining defendants. *See* **Duracell, Inc. v. J & A Distrib., Inc.**, 1990 WL 319974, at *1 (S.D.N.Y. Dec. 6, 1990).

Chesebrough has satisfied its burden under 15 U.S.C. § 1117(a) to demonstrate Classis's sales. In the absence of any information from Classis on costs, and because Classis has not cooperated in discovery, I find that these estimated sales are a fair indicator of profits. Accordingly, I recommend that Chesebrough be awarded $162,000 as damages for infringement.

**B.     Attorney's Fees and Costs**

Pursuant to 17 U.S.C. § 505, the Court has the discretion to award full recovery of costs and reasonable attorney's fees to the prevailing party. In its application, Chesebrough has asked for a total of $379,588.37 in fees and costs. However, this amount includes fees and costs incurred in the subsequent action against the distributors of the infringing products. Supplemental Declaration of Gregory P. Gulia in Further Support of Plaintiffs' Application for Legal Fees and Expenses ("Second Gulia Decl.") ¶ 9. Chesebrough's counsel has not provided

the Court with the standard itemized list of fees, costs, attorneys and other staff employed on the case, and hours and rates of pay, but has instead submitted what is apparently a complete set of invoices billed to the client in this and the subsequent related action. *See* Declaration of Gregory P. Gulia Annexing Invoices for Legal Services and Costs ("Third Gulia Decl."), Exhs. 1 and 2.

1. **The Related Action**

Chesebrough is not entitled to fees and costs in the subsequent action even if the two actions are related and the second action resulted in part because of Classis's default. *See* **Scholastic, Inc. v. Stouffer**, 246 F. Supp. 2d 355, 357 n.3 (S.D.N.Y. 2003) (noting that fees incurred in related action filed by plaintiff in the Eastern District of Pennsylvania were deducted in calculating fee award). Chesebrough is the prevailing party in this action against Classis. The law does not require the losing party in one case to pay the fees and costs of the prevailing party in another case.

Chesebrough argues that there is joint and several liability for copyright infringement and points out that courts have noted that a plaintiff need not sue every infringer to obtain the full damages sought. **Jonesfilm v. Lion Gate Int'l.**, 299 F.3d 134, 140 n.1 (2d Cir. 2002) ("Because every infringer is a joint tort-feasor who is jointly and severally liable to the victim, the plaintiff need only sue one such joint-feasor to obtain the full amount of damages that it is seeking."). However, this principle applies when the question is whether certain parties are indispensable, not who ultimately pays an award of attorney's fees and costs. *See* **id**. The essence of Chesebrough's argument is that Classis must pay the attorney's fees and costs incurred in suing the defendants in the second action because in defaulting, Classis forced Chesebrough to pursue that action. If this were the case, prevailing parties in all separate but related actions could

4

simply locate the losing party most able to pay and file a fee application including the fees and costs for the related cases, rather than filing a fee application in each case.

Finally, the fact that Federal Rule of Civil Procedure 54(c) limits the amount of default judgment to that listed in the complaint, *see* **Pacific Westeel, Inc. v. D & R Installation**, 2003 WL 22359512, at *2 (S.D.N.Y. Oct. 17, 2003), would also preclude the grant of attorney's fees in another case. "It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award." 10 Wright, Miller & Kane, *Federal Practice & Procedure: Civil 3d* § 2663 (1998) (citations omitted).

In the other case relied on by Chesebrough, **Warner Bros. Inc. v. Dae Rim Trading, Inc.**, 695 F. Supp. 100, 105 (S.D.N.Y. 1988), *aff'd in part, rev'd in part,* 877 F.2d 1120 (2d Cir. 1989), the court allowed the defendant's counsel to present cumulative time charges incurred in connection with eight separate copyright actions by the same plaintiff against different defendants. The same counsel represented all the defendants. **Id**. The situation in **Warner Bros**. is not only unique, it is distinct from this case factually, particularly because there the eight actions were tried jointly. **Id**. Furthermore, the court indicated that any fees awarded in later actions had to take into account the compensation it was awarding, and the hours included. More importantly, the court noted that the "number of hours [listed were] a reasonable amount of time spent in the defense of this action alone." **Id**. at 106. That is not the case here. Chesebrough has presented a fee application for $379,588.37, without detailing which amount is attributable to the

5

first action and which to the second. Judge Rakoff granted default judgment to Chesebrough against Classis on June 18, 2003. According to Chesebrough's invoices, counsel had billed a total of $49,634.03 by July 24, 2003, a period which includes counsel's primary efforts to obtain the default judgment. After default was granted, counsel's work focused almost exclusively on the second action. There was little left to do in this action except appear for an inquest in this Court and prepare the submissions requested. Therefore, the $379,588.37 Chesebrough requests is not a reasonable assessment of the fees and costs pertaining to this action alone, and therefore, this case does not qualify for the same treatment as the fee award discussed in **Warner Bros**.

### 2. The Instant Action

The Supreme Court has held that attorney's fees are not to be awarded automatically, but a court may do so in its discretion for purposes of compensation and deterrence. *See* **Fogerty v. Fantasy, Inc.**, 510 U.S. 517, 535 n.19 (1994); **Knitwaves, Inc. v. Lollytogs, Ltd.**, 71 F.3d 996, 1011 (2d Cir. 1995). First, an award of attorney's fees is warranted where infringement was willful. *See* **Kepner-Tregoe**, **Inc. v. Vroom**, 186 F.3d 283, 289 (2d Cir. 1999). Second, under the lodestar approach, the estimated fee is determined by multiplying the number of hours reasonably expended on the litigation by a rate that is reasonable for the attorneys involved. **Grant v. Martinez**, 973 F.2d 96, 99 (2d Cir. 1992) (*citing* **Blanchard v. Bergerson**, 489 U.S. 87, 94 (1989)). Although there is a "strong presumption" that the lodestar is reasonable, the calculated amount may be adjusted, depending on such considerations as the novelty and difficulty of the issues concerned and the experience and ability of the attorney. *See* **Toys "R" Us, Inc. v. Abir**, 1999 WL 61817, at *1-2 (S.D.N.Y. Feb. 10, 1999).

### a. Willful Infringement

Willful infringement may be inferred from a defendant's knowledge that its conduct constitutes infringement. **Original Appalachian Artworks v. Yuil Int.'l Trading Corp.**, 5 U.S.P.Q. 2d 1516, 1523 (S.D.N.Y. 1987) (*citing* **Fitzgerald Pub. Co. v. Baylor Pub. Co., Inc.**, 807 F.2d 1110, 1115 (2d Cir. 1986)). Furthermore, defendant's knowledge need not be actual, but rather constructive, and may be inferred from defendant's conduct. **Yurman Design, Inc. v. Paj, Inc.**, 262 F.3d 101, 112 (2d Cir. 2001); **N.A.S. Import Corp., v. Chenson Enter., Inc.**, 968 F.2d 250, 252 (2d Cir. 1992). The Second Circuit has held that conduct which demonstrates a "reckless disregard" of a copyright owner's rights constitutes willful infringement. **Id**. For example, prior knowledge of an infringed mark accompanied by strong similarities in the infringing product supports a finding of bad faith. **Paddington Corp. v. Attiki Importers & Distrib., Inc.**, 996 F.2d 577, 587 (2d Cir. 1993). A defendant's willful infringement may also be inferred from a failure to appear and defend an action. *See* **Aris Isotoner Inc. v. Dong Jin Trading Co., Inc.**, 17 U.S.P.Q. 2d 1017, 1022 (S.D.N.Y. 1989) (*citing* **Original Appalachian**, 5 U.S.P.Q. 2d at 1524).

In this case, the facts support a finding of bad faith or willfulness. The products are so similar that it is apparent Classis acted with reckless disregard of Chesebrough's trademark rights. Classis also ignored Chesebrough's cease and desist letter and continued to sell the infringing product. Memorandum of Law in Support of Plaintiffs' Application for Damage Award and Attorneys' Fees ("Chesebrough Mem.") at 9. Classis's failure to respond to Chesebrough's complaint or appear before the Court demonstrate an overall reluctance to defend this action. Accordingly, I find that Chesebrough's actions and omissions constitute willfulness.

### b. Reasonable Rate

In determining a reasonable hourly rate, the court should consider the rates for legal services "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." **Gierlinger v. Gleason**, 160 F.3d 858, 882 (2d Cir. 1998) (*quoting* **Blum v. Stevenson**, 465 U.S. 886, 896 n.11 (1984)).  In addition, the court may also rely on its own knowledge of hourly rates charged in private firms to determine what the reasonable attorney's fees are in the relevant community.  **Miele v. New York State Teamsters Conf. Pens. & Retirement Fund**, 831 F.2d 407, 409 (2d Cir. 1987).  For purposes of determining the fee, the relevant community is the judicial district in which the trial court sits. **In re Agent Orange Prod. Liability Litig.**, 818 F.2d 226, 232 (2d Cir. 1987).

This Court twice asked Chesebrough to submit more itemized information about its claim for $379,588.37, ultimately receiving a copy of all of the invoices counsel submitted to the client. *See* **Hensley v. Eckerhart**, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). The supplemental submissions do not provide information on experience.  A review of the invoices and search of the firm's website, however, reveals that the primary attorneys and their rates were: Partner Gregory P. Gulia ("Gulia") ($385/hour) and Associate Bridget A. Short ("Short") (range of $200-270/hour).  Another associate, Victoria C. Hew ($215/hour), also worked on the case for shorter periods of time.  Other individuals mentioned are not listed in the firm's website and so the Court could not determine their titles or range of experience:  X. Gonzalez ($140/hour), C.M. Smith ($145/hour), D.S. Gordon ($70/hour), and L.G. Edwards

($175/hour).

Gulia graduated from law school in 1992 and, according to the firm website, has extensive experience practicing in the area of intellectual property law. The declarations he included with the fee application, however, left much to be desired as he simply affirmed that he believed the fees and expenses were "eminently reasonable" and the "minimum necessary." Second Gulia Decl. ¶ 8. He also stated that the hourly billing rates were "consistent" with those of the area, without listing what the rates were and how they were consistent. **Id**.

The rates reflected in Chesebrough's submissions are either higher than or on the high end of the range of rates approved by courts in this district. *See* **Knigge *ex rel.* Corvese v. Corvese**, 2001 WL 883644, at *3 (S.D.N.Y. Aug. 6, 2001) (finding $200/hour reasonable for an experienced attorney); **Westchester Disabled on the Move v. Village of Larchmont**, 2000 WL 33764992, at *2 (S.D.N.Y. Feb. 2, 2001) (*citing* **Marisol A. v. Giuliani**, 111 F. Supp. 2d 381 (S.D.N.Y. 2000) which found a reasonable rate scale of: $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-250 for attorneys with seven to nine years of experience, $180-200 for attorneys with four to six years of experience, and $130-150 for attorneys with one to three years of experience)); **Weinberger v. Provident Life and Cas. Ins. Co.**, 1999 WL 608790, at *2 (S.D.N.Y. Aug. 12, 1999) (finding $225-300 reasonable for partners and senior attorneys, and $200 reasonable for more junior attorneys). However, because these lower rates were approved at least five years ago, I recommend utilizing counsel's rates in the lodestar calculation.

    c.    **Reasonable Hours**

In the Second Circuit, a party seeking an award of attorney's fees must support its

application by submitting time records that detail "for each attorney, the date, hours expended, and the nature of the work done." **New York State Assoc. for Retarded Children, Inc. v. Carey**, 711 F.2d 1136, 1154 (2d Cir. 1983). Chesebrough's invoices delineate the nature of the work performed, the date on which it was performed, and the hours spent.

When determining the reasonableness of the hours expended by counsel, the court considers "the value of the work product of the specific expenditures to the client's case." **Luciano v. Olsten Corp.**, 109 F.3d 111, 116 (2d Cir. 1997) (*citing* **Lunday v. City of Albany**, 42 F. 3d 131, 133 (2d Cir. 1994); **DiFilippo v. Morizio**, 759 F.2d 231, 235 (2d Cir. 1985)). Morever, the court should reduce the lodestar calculation by any amount of time it deems unreasonable. *See* **Quarantino v. Tiffany & Co.**, 166 F.3d 422, 425 (2d Cir.1998) (*citing* **Hensley**, 461 U.S. at 434 (1983)).

Upon review of Chesebrough's invoices, I find that the hours claimed by counsel are reasonable for the tasks performed. However, the hours relevant to this action are not separated from those relevant to the second action. Therefore, the exact lodestar calculations cannot be made. Instead, I base this recommendation of a reasonable award for attorney's fees and costs on the total amount counsel had billed to Chesebrough up to the period ending shortly after default judgment was entered on June 18, 2003. This amount, $49,634.03, is also consistent with trademark and copyright infringement cases where default judgment was granted and an award of attorney's fees and costs allowed. **Silhouette Int'l Schmied AG v. Vachik Chakhbazian**, 2004 WL 2211660, at *3-4 (S.D.N.Y. Oct. 4, 2004) ($49,596.50 in attorney's fees and $3,957.80 in costs); **Sara Lee Corp. v. Bags of New York, Inc.**, 36 F. Supp. 2d 161, 171 (S.D.N.Y. 1999) ($46,045.63 in attorney's fees and costs); **Aris Isotoner Inc.**, 1989 WL 236526, at *1

($39,407.50 in attorney's fees increased to $65,216.25 and $6,467.53 in costs increased to 11,642.46 after defending motion to vacate default judgment). I therefore recommend that Chesebrough be awarded the amount of $49,634.03 in attorney's fees and costs.

## IV. CONCLUSION

Based on the foregoing analysis, I recommend that Chesebrough be awarded $162,000 in damages, and $49,634.03 in attorney's fees and costs, for a total of $211,634.03.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs.**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: February 16, 2006**
**New York, New York**

Respectfully Submitted,

*[signature]*

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

Counsel for Plaintiff
Gregory P. Gulia
Duane Morris LLP
380 Lexington Avenue
New York, NY 10168
Fax: 212-692-1020

Defendant
Classis Distributors, Inc.
98 North Clinton Street
East Orange, NJ 07017